## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **TRACE ROYAL DUNCAN,** )<br>)<br>**Movant,** )<br>)<br>**vs.** )<br>)<br>**WARDEN; and the** )<br>**ATTORNEY GENERAL** )<br>**OF THE STATE OF ALABAMA,** )<br>)<br>**Respondents.** ) | **Case No. 2:05-cv-2457-VEH-TMP** |

## <u>MEMORANDUM OPINION</u>

This is an action by an Alabama state prisoner filed pursuant to 28 U.S.C. § 2254, challenging the constitutional validity of the capital murder conviction he received on November 2, 1995, in the Circuit Court of Jefferson County. The petitioner, Trace Royal Duncan, filed his *pro se* petition for writ of *habeas corpus* in this court on October 27, 2005.  He is incarcerated at the St. Clair Correctional Facility in Springville, Alabama, serving a sentence of life without parole.

## <u>PROCEDURAL HISTORY</u>

After a jury trial on his capital charges, the jury recommended 10-2 that petitioner be sentenced to death, and on October 15, 1996, the trial judge accepted the jury's recommendation and sentenced petitioner to death.  Petitioner appealed to the Alabama Court of Criminal Appeals, which affirmed the conviction and sentence in a published opinion dated September 17, 1999. <u>Duncan v. State</u>, 827 So. 2d 838 (Ala. Crim. App. 1999).  He sought rehearing, which was denied, and then

sought review in the Alabama Supreme Court.  That court affirmed in a published opinion dated March 20, 2001.  Ex parte Duncan, 827 So. 2d 861 (Ala. 2001).  Petitioner sought rehearing, which was denied on February 8, 2002, and then sought *certiorari* review in the United States Supreme Court, which was denied on October 7, 2002.  Duncan v. Alabama, 537 U.S. 860, 123 S. Ct. 237, 154 L. Ed. 2d 99 (2002).  At this point, petitioner's conviction and sentence became final.

Through counsel, petitioner filed a petition for post-conviction relief pursuant to Alabama Rule of Criminal Procedure 32 on July 29, 2003.  The petition was amended three times and, in a written order dated May 25, 2004, the trial court denied the Rule 32 petition.  Petitioner appealed to the Alabama Court of Criminal Appeals, which affirmed as to all claims relating to the guilt phase of the trial, but remanded for re-sentencing in light of the United States Supreme Court's opinion in Roper v. Simmons, 543  U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1(2005), prohibiting the execution of a person who committed the crime when under the age of 18.  Duncan v. State, 925 So. 2d 245 (Ala. Crim. App. 2005).  In compliance with the Alabama Court of Criminal Appeals' opinion, the trial court set aside the death sentence and re-sentenced petitioner to life in prison without the possibility of parole on March 31, 2005.  Petitioner sought review in the Alabama Supreme Court, but his petition for writ of *certiorari* was denied by order dated August 19, 2005.

Petitioner filed the instant *pro se* petition in this court on November 29, 2005.  However, as discussed in this court's order to show cause dated February 2, 2007, it appears that the petition

should be deemed filed as early as October 14, 2005.[1]  In the instant petition, which the court views as timely,[2] petitioner presents the following issues:

> (1) that there was insufficient evidence to support a conviction of capital murder under Alabama Code § 13A-5-40(a)(1) in that the state failed to prove the elements of kidnapping in the first degree;

> (2) that there was insufficient evidence to support a conviction of capital murder under Alabama Code § 13A-5-40(a)(2) in that the state failed to prove the elements of robbery in the first degree; and

> (3) that he was denied effective assistance of counsel during the guilt phase of his trial in that his trial counsel: (a) failed to secure a fair and impartial jury; (b) failed to object to prosecutorial misconduct; (c) failed to secure necessary experts, (d) failed to provide an effective opening and closing argument; (e) failed to formulate any reasonable theory of defense; and (f) counsel has been disciplined and suspended for actions taken in other cases.

Pursuant to the court's order to show cause, and after seeking and receiving an extension of time in which to respond, the respondents filed the motion to dismiss the petition as untimely.  On February 1, 2006, the parties were notified that the petition would be considered for summary disposition, and the petitioner was notified of the provisions and consequences of this procedure under Rule 8 of the Rules Governing § 2254 Cases.  After examining the time-bar issue, the court

---

[1]    It was on that date that petitioner signed the request to proceed *in forma pauperis* and, presumably, delivered the petition to prison authorities for mailing.  Under the "mailbox rule" enunciated in Houston v. Lack, 487 U.S. 266, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988), and applicable here because petitioner is *pro se*, this court must deem the petition filed on the date that the petitioner signed the verification.  In this case, however, it must be noted that petitioner failed to sign, date, or otherwise verify the petition itself, but signed only the *in forma pauperis* form.  Although the court is unsatisfied with the assumption that it took six weeks for the petition to make its way from the prison mailroom to the court, there is no other evidence establishing the date it was delivered to officials for mailing.

[2]    Accordingly, respondents' motion to dismiss the petition as untimely (court document #7)is due to be and hereby is DENIED.

–3–

entered an order to show cause, directing the respondents to provide additional evidence that might support their allegations regarding timeliness. The respondents essentially conceded that there is no evidence as to when the instant petition was signed or delivered to prison officials for mailing, and further raised other defenses to petitioner's claims. On February 2, 2007, petitioner again was notified that the claims were subject to summary adjudication, and was given additional time in which to file any further response. To date, no additional response has been filed.

## DISCUSSION

Both of petitioner's claims relating to the sufficiency of the evidence (Claims 1 and 2), were raised in the direct appeal and were adjudicated on the merits. Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the petitioner can obtain relief on claims that were adjudicated in the state courts only if he shows that the adjudication of the claims in the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2). See Williams v. Taylor, 529 U.S. 362, 404, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000); Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). This standard of review is strict, and federal courts are required to give "greater deference to the determinations made by state courts than they were required to under the previous law." Verser v. Nelson, 980 F. Supp. 280, 284 (N.D. Ill. 1997)(quoting Spreitzer v. Peters, 114 F.3d 1435, 1441 (7th Cir. 1997)).

The state-court determination of an issue will be sustained under § 2254(d)(1) unless it is "contrary" to clearly established, controlling Supreme Court law or is an "unreasonable application" of that law.  These are two different inquiries, not to be confused.  The Supreme Court has explained:

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* ... clearly established Federal law, as determined by the Supreme Court of the United States."  (Emphases added.)

Williams v. Taylor, 529 U.S. 362, 404, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  A state-court determination is "contrary" to clearly established law in either of two ways:

> First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law.  Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.

Id. at 405.  Likewise, a state-court determination can be an "unreasonable application" of clearly established law in two ways:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

–5–

Id. at 407; see Putman v. Head, 268 F.3d 1223 (11th Cir. 2001).   Whether the application is "reasonable" turns not on subjective factors, but on whether it was "objectively unreasonable."  The question is not whether the state court "correctly" decided the issue, but whether its determination was "reasonable," even if incorrect.

### A.  Sufficiency of the Evidence of Kidnapping

Petitioner first alleges that there was insufficient evidence to support a conviction of capital murder during a kidnapping in his direct appeal.  A brief summary of the facts of the crime of which petitioner was convicted is necessary to understanding this claim.

Duncan was convicted of capital murder arising from the 1994 slaying of Vicki Deblieux, age 37.  Deblieux was hitchhiking on an interstate highway near Trussville, Alabama, when she was picked up by four teenage boys who had been drinking and smoking marijuana.  The four boys drove her to a wooded area, where they hit her in the head.  She tried to run away, but they tackled her, then kicked and stomped her until she died about 30 minutes later.  They put her body in the truck, went through her luggage, and hid the luggage in the woods.  They stripped her, stabbed and mutilated the body some 180 times, cut out a lung, and cut off her fingers and thumbs.  Eventually, they threw the body over a cliff.  Duncan, 827 So. 2d at 840-42.  They were discovered and apprehended when one of boys showed a severed finger to friend, remarking that he wanted to make it into a necklace.

The claim regarding sufficiency of the evidence of kidnapping was reviewed by the Alabama Court of Criminal Appeals and the Alabama Supreme Court.   The Alabama Court of Criminal Appeals affirmed the conviction, stating:

> The appellant contends that the evidence was insufficient to support his conviction for capital murder under § 13A-5-40(a)(1) because, he says, the State failed to prove the elements of kidnapping in the first degree.  The appellant argues that there was no evidence of a kidnapping, because, he says, the victim was never restrained, held, abducted, or forcibly confined.  In support of his argument, the appellant contends that the victim was willing to be a passenger in the truck and was voluntarily with the participants at the scene of the killing until the moment of her death.

> Section 13A-6-43 defines "kidnapping in the first degree" as follows:

>> "(a) A person commits the crime of kidnapping in the first degree if he abducts another person with intent to

>> "....

>> "(3) Accomplish or aid the commission of any felony or flight therefrom: or

>> "(4) Inflict physical injury upon him...."

> The abduction element of kidnapping in the first degree is defined at § 13A-6-40(2), as follows:

>> "(2) ABDUCT.  To restrain a person with intent to prevent his liberation by either:

>> "(a) Secreting or holding him in a place where he is not likely to be found, or

>> "(b) Using or threatening to use deadly physical force."

> Additionally, "restrain" is defined at § 13A-6-40(1), Ala. Code 1975, as follows:

"(1) To intentionally or knowingly restrict a person's movements unlawfully and without consent, so as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved. Restraint is 'without consent' if it is accomplished by:

"(a) Physical force, intimidation or deception...."

This Court stated in *Owens v. State*, 531 So. 2d 2, 13-14 (Ala. Cr. App. 1986):

"Proof of intent, necessary to convict under § 13A-6-43, 'must be found by the jury and may be inferred from the facts and circumstances attending the whole transaction.' *Doss v. State*, 23 Ala. App. 168, 123 So. 237, 248 (1929). In the case at bar, the State's evidence was predominately circumstantial in nature. 'A conviction may be had on evidence which is entirely circumstantial, so long as that evidence is so strong and cogent as to show defendant's guilt to a moral certainty.' *Tanner v. State*, 291 Ala. 70, 71, 277 So. 2d 885, 886 (1973). 'The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude.' *Cumbo v. State*, 368 So. 2d 871, 874 (Ala. Crim. App. 1978), cert. denied, 368 So. 2d 877 (Ala. 1979). In reviewing the sufficiency of the State's evidence of kidnapping in the first degree, we must view the evidence in the light most favorable to the State. *Id*."

The State's evidence revealed that the appellant and his codefendants picked up the victim with the intent to "inflict physical injury upon" her. The appellant's written statement indicated that "Dale [Grayson] had been talking about killing somebody for some time that night," prior to the victim's abduction. The act of transporting the victim to an isolated area clearly supports the conclusion that the appellant and his accomplices intended to prevent her liberation by "[s]ecreting [her] or holding [her] in a place where [she was] not likely to be found." The evidence indicated that the restraint required for the abduction of the victim was accomplished through "deception." § 13A-6-40(1)(a). The evidence indicated that the victim was hitchhiking to Louisiana to see her mother and that the appellant and his codefendants, acting under false pretenses, informed the victim that they would take her to Louisiana. Additionally, evidence was presented that the victim protested

when the car exited the interstate and the driver drove to a wooded area to pick up a truck. Moreover, the evidence indicated that the victim asked to be let out of the car when she realized that they were not headed toward her destination. Thus, at that point, she was being held against her will. Evidence was presented that immediately before her death, the victim was hit in the head with a beer bottle, at which time she attempted to run away but was tackled, and then kicked and beaten until she died. According to his own statement, the appellant participated in the murder. The evidence strongly suggests that the foursome intended to harm Deblieux. Moreover, there was evidence indicating that the appellant stood watch over the victim when she "used the bathroom" in the woods and that he returned to tell the others that she would be the perfect victim.

The appellant's argument that, because the victim initially entered the vehicle voluntarily, she was not forcibly confined is without merit. Merely because the victim initially agreed to accompany the individuals does not negate the fact that she was later forcibly confined. The concept of restraint is "concerned with intentional, unlawful and nonconcensual removal or confinement." § 13A-6-40, Commentary. This Court has previously held that a victim may voluntarily enter the place where she is later restrained against her will, and the crime still constitutes a kidnapping. *T.R.D. v. State*, 673 So. 2d 838 (Ala. Cr. App. 1995); *Mims v. State*, 591 So. 2d 120 (Ala. Cr. App. 1991); *Jenkins v. State*, 627 So. 2d 1034 (Ala. Cr. App. 1992); and *Musgrove v. State*, 519 So. 2d 565 (Ala. Cr. App. 1986).

Thus, there was sufficient evidence presented by the State to allow the jury to exclude every reasonable hypothesis except that of guilt of the capital crime charged.

Duncan v. State, 827 So. 2d at 842-43.

The Alabama Supreme Court affirmed on *certiorari* review. The burden of showing that the decisions reached by the state court were "contrary to, or involved an unreasonable application of Federal law" or were "based on an unreasonable determination of the facts" lies with the petitioner. In this case, petitioner has made no showing whatsoever that the decision was in any way unreasonable. He simply views the evidence in a different light, relying on the untenable conclusion that because his victim voluntarily got into the truck the night she was brutally killed, she could not have been kidnapped. He further makes the rather absurd argument that the victim was happily in

the company of her killers until the moment she was murdered, and therefore was never illegally restrained.  The state courts properly rejected this meritless claim, and their finding is due deference here.  *Habeas* relief is unavailable to petitioner on this claim pursuant to § 2254(d)(1) and (d)(2).

### B.  Sufficiency of the Evidence of Robbery

Like petitioner's preceding claim relating to the sufficiency of the evidence, Claim 2 is based on a flimsy argument that, because he did not keep the victim's possessions for his own gain, but instead took them and disposed of them where he hoped they would not be found, she was not a victim of a robbery.  This claim also was presented to the state courts in the direct appeal.  The Alabama Court of Criminal Appeals rejected the claim, and was affirmed by the Alabama Supreme Court.  The Alabama Court of Criminal Appeals held:

> The appellant contends that the evidence was insufficient to support his conviction for capital murder under § 13A-5-40(a)(2) because, he says, the State failed to prove the elements of robbery in the first degree. Specifically, the appellant argues that "there was no evidence of a robbery, and there was in fact no robbery." In support of his argument, the appellant contends that the victim had belongings with her that were in the automobile at the time of her death and that remained there until they were placed into the woods near a car wash.  He further argues that there was no evidence presented at trial that he took any property belonging to the victim or that robbery or theft had anything to do with the killing.
>
> Section 13A-8-41, Ala. Code 1975, provides, in pertinent part:
>
> "(a) A person commits the crime of robbery in the first degree if he violates Section 13A-8-43 and he:
>
> "(1) Is armed with a deadly weapon or dangerous instrument; or
>
> "(2) Causes serious physical injury to another."

Section 13A-8-43, Ala.Code 1975, provides:

"(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:

"(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance...."

This Court has stated:

"To sustain a conviction under § 13A-5-40(a)(2) for capital robbery-murder, the state must prove beyond a reasonable doubt: (1) a 'robbery in the first degree or an attempt thereof,' as defined by § 13A-8-41; (2) a 'murder,' as defined by § 13A-6-2(a)(1); and (3) that the murder was committed 'during' the robbery or attempted robbery, i.e., that the murder was committed 'in the course of or in connection with the commission of, or in immediate flight from the commission of' the robbery or attempted robbery in the first degree, § 13A-5-39(2). *Connolly v. State*, 500 So. 2d 57 (Ala. Cr. App. 1985), aff'd, 500 So. 2d 68 (Ala. 1986). The capital crime of robbery when the victim is intentionally killed is a single offense beginning with the act of robbing or attempting to rob and culminating in the act of intentionally killing the victim; the offense consists of two elements, robbing and intentional killing. *Davis v. State*, 536 So. 2d 110 (Ala. Cr. App. 1987); *Magwood v. State*, 494 So. 2d 124 (Ala. Cr. App. 1985), aff'd, *Ex parte Magwood*, 494 So. 2d 154 (Ala.), cert. denied, 479 U.S. 995, 107 S. Ct. 599, 93 L. Ed. 2d 599 (1986). The intentional murder must occur during the course of the robbery in question; however, the taking of the property of the victim need not occur prior to the killing. *Clark v. State*, 451 So. 2d 368 (Ala. Cr. App.), cert. denied, 451 So. 2d 368 (Ala. 1984). While the violence or intimidation must precede or be concomitant with the taking, it is immaterial that the victim is dead when the theft occurs. *Thomas v. State*, 460 So. 2d 207 (Ala. Cr. App. 1983), aff'd, 460 So. 2d 216 (Ala. 1984).

" '....

" 'Although a robbery committed as a "mere afterthought" and unrelated to the murder will not sustain a conviction under

-11-

§ 13A-5-40(a)(2) for the capital offense of murder-robbery, see *Bufford v. State*, [infra], *O'Pry v. State*, supra [642 S.W.2d 748 (Tex. Cr. App. 1981)], the question of a defendant's intent at the time of the commission of the crime is usually an issue for the jury to resolve. *Crowe v. State*, 435 So. 2d 1371, 1379 (Ala. Cr. App. 1983). The jury may infer from the facts and circumstances that the robbery began when the accused attacked the victim and the capital offense was consummated when the defendant took the property and fled. *Cobern v. State*, 273 Ala. 547, 550, 142 So. 2d 869, 871 (1962). The defendant's intent to rob the victim can be inferred where "[t]he intervening time, if any, between the killing and robbery was part of a continuous chain of events." *Thomas v. State*, 460 So. 2d 207, 212 (Ala. Cr. App. 1983), affirmed, 460 So. 2d 216 (Ala. 1984). See also *Cobern v. State*, 273 Ala. 547, 142 So. 2d 869 (1962); *Crowe v. State*, 435 So. 2d 1371 (Ala. Cr. App. 1983); *Bufford v. State*, 382 So. 2d 1162 (Ala. Cr. App.), cert. denied, 382 So. 2d 1175 (Ala. 1980); *Clements v. State*, 370 So. 2d 708 (Ala. Cr. App. 1978), affirmed in pertinent part, 370 So. 2d 723 (Ala.1979).'

"*Connolly*, 500 So. 2d at 63."

*Hallford v. State*, 548 So. 2d 526, 534-35 (Ala. Cr. App. 1988).

In the present case, the jury could have reasonably inferred from the circumstances that the appellant, acting in complicity with three other individuals, planned to kill the victim and to cover up the crime by disposing of the body in such a way that it was unlikely to be found and, if found, would be difficult to identify. The jury could have reasonably inferred from the evidence that in carrying out this plan, the appellant stole the victim's luggage and personal items as a part of the overall plan or scheme to dispose of incriminating evidence. The site selected for the commission of the crime, an isolated wooded area accessible only by a dirt road, and the efforts used to dispose of the incriminating evidence are facts from which the jury could have reasonably concluded that the robbery and murder were planned in advance and that when the killing took place, the appellant intended to steal the victim's belongings. The victim's luggage and clothing were scattered in a heavily wooded area some four miles from the murder scene; the victim's other personal belongings were in the trunk of a codefendant's car. The state's evidence supported the conclusion that the robbery began when one of the appellant's accomplices began to sort through the victim's belongings while she was "using the bathroom" in the woods and was consummated after she was beaten to death and her belongings were taken. Thus, there was sufficient evidence to support the robbery component of the capital offense.

Duncan, 827 So. 2d at 843-45.  The Alabama Supreme Court affirmed.  Ex parte Duncan, 827 So. 2d at 862.

In the instant *habeas* action, petitioner has not and could not allege that the state court's determination was "contrary to" federal law or an unreasonable application of the facts.  Again, he offers the ridiculous argument that he "never took any of her property, which was ultimately all discarded in the woods."  The appellate court correctly noted that a reasonable juror could infer from the evidence that the petitioner took part in a robbery that occurred in conjunction with the murder.  Because the state court's adjudication of this claim did not involve any unreasonable application of the law or any unreasonable application of the facts, the petitioner is not entitled to *habeas* relief on Claim 2.

### C.  Ineffective Assistance of Trial Counsel

Petitioner's claims of ineffective assistance of counsel, (Claims 3(a) through (f)), were raised in his Rule 32 petition and were dismissed for a failure to comply with pleading requirements of Alabama Rule of Criminal Procedure 32.6(b).

It should first be noted that the ineffective-assistance claims are due to be dismissed here as inadequately pled.  Petitioner simply lists the six alleged deficiencies without providing any factual bases for the claims.  He makes no reference to what might have rendered the jury impartial or what his counsel should have done to "secure a fair" jury.  He further fails to identify any prosecutorial misconduct to which counsel should have objected.  Next, petitioner fails to identify any expert witness (or any subject about which an expert could offer testimony), much less to explain how

expert testimony might have changed the outcome of the case.  Petitioner fails to describe any deficiency in the opening statement or closing argument, or even to vaguely explain what "reasonable theory of defense" should have been argued in light of the facts of the case.  Finally, petitioner makes no explanation for how counsel's deficiencies in other cases for other clients could evidence ineffectiveness in this case.  Accordingly, Claims 3(a) though (f) fail to state a claim upon which relief may be granted and are due to be dismissed on that ground alone.

In providing its response to the order to show cause, the respondents have, out of an admirable abundance of caution, responded to petitioner's claims as if he had set them out more fully.  The respondents refer to the claims made on appeal and in the Rule 32 petition that deal with these subjects, and have essentially credited the petitioner with having set forth a factual bases for those claims.  The court, also giving petitioner credit which he is not due, will further address the claims as if they had been adequately pled.  The court finds that, even if the claims were not due to be dismissed for failure to state a claim, they still would be subject to dismissal and denial.

Federal courts may not consider a claim set forth in a *habeas* petition when a petitioner has failed to follow the state's procedural rules for raising the claim in the state courts.  The Eleventh Circuit has stated:

> The federal courts' authority to review state court criminal convictions pursuant to writs of habeas corpus is severely restricted when a petitioner has failed to follow applicable state procedural rules in raising a claim, that is, where the claim is procedurally defaulted.  Federal review of a petitioner's claim is barred by the procedural default doctrine if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, Harris v. Reed, 489 U.S. 255, 263, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989), and that bar provides an adequate and independent state ground for denying relief.  See id. at 262, 109 S. Ct. at 1042-43; Johnson v. Mississippi, 486 U.S. 578, 587, 108 S. Ct. 1981, 1987, 100

> L. Ed. 2d 575 (1988).  The doctrine serves to ensure petitioners will first seek relief in accordance with state procedures, see Presnell v. Kemp, 835 F.2d 1567, 1578-79 (11th Cir. 1988), cert. denied, 488 U.S. 1050, 109 S. Ct. 882, 102 L. Ed. 2d 1004 (1989), and to "lessen the injury to a State that results through reexamination of a state conviction on a ground that a State did not have the opportunity to address at a prior, appropriate time." McCleskey v. Zant, ___ U.S. ___, 111 S. Ct. 1454, 1470, 113 L. Ed. 2d 517 (1991).

Johnson v. Singletary, 938 F.2d 1166, 1173 (11th Cir. 1991).  Thus, if a claim has been presented previously to a state court in some form, a federal *habeas* court may refuse to hear that claim only if the last state court rendering the judgment "'clearly and expressly' states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263, 109 S. Ct. 1038, 103 L. Ed. 2d 308, 317 (1989).

In this case, the state courts determined that several of the petitioner's claim of ineffective assistance of counsel were procedurally barred from consideration.  Thus, in this *habeas* action, the court must determine whether petitioner has overcome those procedural bars under either the "cause and prejudice" or "fundamental miscarriage of justice" exceptions to the doctrine of procedural default.

### 1.  Jury Selection

In this case, petitioner first raised claims that his attorney was ineffective in regards to selecting a jury in the Rule 32 petition.  The Alabama Court of Criminal Appeals examined the claims in evaluating his appeal from the trial court's denial of the Rule 32 petition, finding that he failed to plead the claims with sufficient specificity to warrant relief.  That court stated:

-15-

Fourth, the appellant asserts that counsel did not secure a fair and impartial jury.

a.

The appellant alleges that counsel rendered ineffective assistance by not moving for a change of venue. In relation to this claim, his entire argument in his petition consisted of the following:

> "In Mr. Duncan's case, there was evidence of [presumed and actual] prejudice.  The crime was widely publicized in all forms of media, saturating the community with accounts of the crime.  This coverage was sensationalist, including speculation about cannibalism and satanic worship.   In addition, Carey Dale Grayson, one of Mr. Duncan's co-defendants, provided an interview to the press before Mr. Duncan's trial.  In addition to the 'presumed prejudice,' there was also actual prejudice. Twenty-eight of the jury venire members responded affirmatively when asked if they had heard about this case from the media."
>
> (C.R. 218-19.)

In its order dismissing the petition, the circuit court found as follows:

> "Duncan has failed to include any facts *in his petition* to show that his trial counsel could have presented evidence sufficient to warrant a change of venue.  Rather, he has simply [made] bare allegations that there was prejudicial publicity and that this publicity biased the jurors, such that he could not receive a fair trial.  *See Henderson v. State*, 612 So. 2d 1256, 1258 (Ala. Crim. App. 1992) (holding that '[a] bare allegation is not sufficient to prove that the defendant was actually prejudiced or that the community was so saturated with prejudicial publicity as to render the trial setting inherently suspect').  Further, newspaper articles or widespread publicity, without more, are insufficient to grant a motion for change of venue. *Anderson v. State*, 362 So. 2d 1296, 1298 (Ala. Crim. App. 1978).  In *Irvin v. Dowd*, 366 U.S. 717, 723 (1961), the Supreme Court explained that it is sufficient if a juror can lay aside his impression or opinion and render a verdict based on the evidence presented at trial.  It is not necessary that jurors be totally ignorant of the facts of the case and the issues involved.

-16-

> "Duncan bases his allegations of presumed prejudice and actual prejudice on the fact that there was some media coverage of the event, although he has not identified any details of that coverage. He also relies on a statement allegedly made by co-defendant Grayson to the press, but has failed to disclose the substance of the statement, when it was made, and how it affected any specific juror. Although Duncan makes note that some twenty-eight potential jurors indicated during voir dire that they had heard about the case, he has not identified any juror who served on his jury who was biased as a result of that knowledge. In fact, the Court and the parties questioned individually any jurors who indicated pretrial knowledge of the case during voir dire. They indicated that they could set aside any prior knowledge and render a verdict based solely on the evidence presented at trial. The Court excused those veniremembers who said they were unable to put aside any pretrial knowledge. The Court finds that [this allegation] fails to meet specificity and full factual pleading requirements of Rule 32.6(b); therefore, it is hereby summarily dismissed."

(C.R. 19-21.) The record supports the circuit court's findings, and we adopt them as part of this opinion. Therefore, summary dismissal was proper as to this claim.

                                    b.

The appellant also alleges that counsel rendered ineffective assistance by not securing sequestration of the jury. In relation to this claim, his entire argument in his petition consisted of the following:

> "Trial counsel did not adequately seek a fully sequestered jury. The facts of this case produced widespread media coverage. Twenty-eight of the original veniremembers acknowledged having heard or seen media coverage of the crime. Though time had elapsed between the crime and the trial, media coverage increased with the beginning of the trial, especially since Mr. Duncan was the first of four co-defendants to be tried.

> "... Despite the need to sequester the jury, defense counsel filed a one-page, boilerplate motion to sequester the jury on September 27, 1995. There was not a single basis in fact or law to support the motion. In addition, there is no record of any oral argument or judicial ruling on the motion.

"... Finally, during voir dire, defense counsel assured one of the veniremembers that neither defense nor prosecution had requested that the jury be sequestered.  (R. 95)  Without a ruling on the record, trial counsel effectively surrendered the filed motion and anticipated not renewing his motion after voir dire.  Defense counsel's ineffective motion, lack of diligence in securing a ruling, and assurance to a potential juror without the information provided during voir dire prejudiced Mr. Duncan.  As a consequence to trial counsel's failure, Mr. Duncan was not tried by a fair and impartial jury in violation of his Constitutional rights."

(C.R. 219.)

In its order dismissing the petition, the circuit court found as follows:

"Duncan does not identify the contents of the 'increased' media coverage at the beginning of the trial, nor does he identify any juror who served on his jury who was prejudiced as a result of the media coverage.  Instead, he simply concludes that, '[d]espite the need to sequester the jury, defense counsel filed a one-page, boilerplate motion to sequester the jury ... [with] not a single basis in fact or law to support the motion.  In addition, there is no record of any oral argument or judicial ruling on the motion.' (Petition at p. 12)

"... Duncan has proffered no facts in his petition that would rebut the prima facie presumption that he was not prejudiced by the court's failure to require sequestration.  Instead, he has presented to the Court only bare allegations of prejudice that, he says, resulted from trial counsel's failure to adequately seek a fully sequestered jury.  He has not identified what more counsel should have done, much less that he would have been entitled to have the jury sequestered.  The Court finds that the allegation ... fails to meet the specificity and full factual pleading requirements of Rule 32.6(b); therefore, it is hereby summarily dismissed by the Court."

(C.R. 21-22.)  The record supports the circuit court's findings, and we adopt them as part of this opinion.  We further note that the record from the appellant's direct appeal indicates that, at counsel's request, the trial court thoroughly and repeatedly instructed the jurors not to discuss the case with anyone and not to have contact with any form of media about the case.  Therefore, the record does not indicate that

counsel rendered ineffective assistance in this regard.  Accordingly, summary dismissal was proper as to this claim.

c.

[16] The appellant further alleges that counsel rendered ineffective assistance by not removing biased jurors from the venire.  In its order dismissing the petition, the circuit court found as follows:

"Duncan alleges that trial counsel failed to remove jurors who were partial and biased.... He specifically refers to veniremembers Barker, James, Sterling, and Plan.   Duncan contends that Barker's 'relationships with counsel and law enforcement officers and his status as an attorney' created 'a high likelihood that other jurors deferred to [his] opinions during jury deliberations.' ... This allegation is pure speculation ... Duncan has pleaded no facts showing any bias or prejudice on the part of Mr. Barker.  Rule 32.6(b), Ala. R. Crim. P.

"... Further, Barker emphatically stated that his relationships would not influence him or cause him to assign greater weight to the testimony of law enforcement officials.  (R. 72-73).  Barker also did not raise his hand when asked by the trial court if anyone had any bias or prejudice that would influence their verdict.  (R. 8)  Further, Barker stated during individual voir dire that he [had] no opinion about the guilt or innocence of the defendant, and that he would enter the jury box and decide the case solely on the evidence presented at trial.  This allegation is directly refuted by the record; thus, it fails to state a claim and does not establish that a material issue of fact or law exists as required by Rule 32.7(d).  Therefore, this allegation is hereby denied by the Court.  *See Gibby v. State*, 753 So. 2d 1206, 1207-1208 (Ala. Crim. App. 1999) (holding that a postconviction claim that is refuted by the record is without merit). Rule 32.7(d), Ala. R.Crim. P.

"... Duncan also alleges that veniremembers James and Sterling should have been dismissed because they were close to law enforcement officials.  Again, other than asserting that they had relationships with persons involved in law enforcement, Duncan has made no attempt to show that these jurors had any bias or prejudice against him.  Both James and Sterling indicated during voir dire that none of their relationships with law enforcement would influence the

-19-

weight they would give to the witnesses' testimony, nor would it
influence their verdict.  (R. 72-73)

"... Duncan also alleges that James and Sterling should have been
removed from the venire because they [had] been exposed to pretrial
publicity about the case.  As noted above, a potential juror who has
some knowledge about the case is not necessarily biased or
prejudiced upon entering the jury box.  The real question is whether
they can set aside that knowledge and decide the case solely on the
evidence presented at trial.  During individual voir dire James stated
that she had read about the case when it first occurred, but that she
did not remember an awful lot.  (R. 191)  She also stated that she had
no opinion about the case, and that she could set aside what she knew
and decide the case fairly and impartially.  (R. 191).

"... Similarly, Ms. Sterling said she had heard a news flash on the
radio driving in for jury duty, but she had no opinion about the case.
She said she could set aside any prior knowledge and decide the case
on the evidence presented at trial.  (R. 228).  Clearly, Duncan's bold
assertions of bias and prejudice[ ] against these jurors are directly
refuted by the record.  *See Gibby v. State*, 753 So. 2d 1206,
1207-1208 (Ala. Crim. App. 1999) (holding that postconviction
allegations directly refuted by the trial record are without merit).  The
Court finds that these allegations fail to state a claim or establish that
a material issue of fact or law exists as required by Rule 32.7(d).
Therefore, these allegations are denied by the Court.

"... Lastly, Duncan alleges that trial counsel was ineffective for failing
to remove veniremember Plan because of her exposure to pretrial
publicity and because she had known a murder victim.  Like his other
allegations of ineffectiveness for failing to remove jurors, this
allegation is unsupported by any facts.  It is a mere conclusion of bias
and prejudice.  Further, the record shows that Ms. Plan indicated that
her limited exposure to the case (hearing on the radio that the cases
were going to be tried) had no bearing on her ability to be a fair and
impartial juror.  (R. 225)  She said that she would base her verdict
solely on the evidence presented at trial.  (R. 225)  Ms. Plan also
indicated during individual voir dire that knowing someone who was
murdered — a fact she disclosed to the Court on her own — would
not affect her ability to be fair and, again, that she would decide the
case solely one [sic] the evidence presented at trial.  (R. 225)  The
Court finds that the allegations about juror Plan fail to state a claim

or establish that a material issue of fact or law exists as required by Rule 32.7(d).  *See Gibby v. State*, 753 So. 2d at 1207-1208. Therefore, these allegations are denied by the Court.

"... In sum, Duncan has offered nothing more than bare allegations that the jurors ... were biased or prejudiced.  The record is devoid of any evidence [of] bias or prejudice on the part of the jury. Further, the Court has no recollection of any fact that would [have] indicated these jurors were biased against Duncan.  The Court finds that Duncan's allegations of juror bias are directly refuted by the record; therefore his allegations of ineffective assistance of counsel for failing to remove these jurors are without merit and are hereby denied."

(C.R. 22-25.) Based on our review of the jury selection proceedings, the record supports the circuit court's findings.  Therefore, we adopt them as part of this opinion, and summary dismissal was proper as to this claim.

d.

The appellant finally alleges that counsel rendered ineffective assistance by not adequately presenting and arguing the *Batson* motion.  In relation to this claim, his entire argument in his petition consisted of the following:

"Trial counsel ineffectively presented a *Batson* motion.  (R. 244); *Batson v. Kentucky*, 476 U.S. 79 (1986).  In this motion, the only evidence presented by trial counsel was the State's use of eight out of fourteen strikes to remove Black veniremembers.  Trial counsel failed to present evidence about the heterogeneity of these jurors, suggesting that race was the only characteristic they held in common.  *See Ex parte Branch*, 526 So. 2d 609, 622 (Ala.1987).  Trial counsel failed to investigate or present evidence about the prosecutors' record of discrimination or the discriminatory type of questioning done on voir dire.  *Id*. at 623.  Trial counsel failed to note any disparate treatment of jurors of different races but with similar characteristics.  *Id*.  This failure to present evidence constitutes ineffective assistance of counsel.   This prejudiced Mr. Duncan by denying him his constitutional right to a fair and impartial jury."

(C.R. 222-23.)

In its order dismissing the petition, the circuit court found as follows:

> "[The appellant] has proffered the Court no facts in his petition to support his bare allegation that his constitutional rights have been violated. He has proffered no proof of disparate treatment, of race being the only factor shared by the jurors, or of the prosecutors' alleged history of discrimination. Duncan has failed to plead any facts that, if true, would establish trial counsel's performance was deficient or caused him to be prejudiced as required by Strickland; therefore, this allegation is hereby summarily dismissed by the Court. Rule 32.6(b), Ala. R.Crim. P."

(C.R. 26.) The record supports the circuit court's findings, and we adopt them as part of this opinion. Therefore, summary dismissal was proper as to this claim.

5.

Fifth, the appellant asserts that counsel rendered ineffective assistance by conducting inadequate and inconsistent voir dire questioning regarding exposure to pretrial publicity and by not securing an expert to assist during the jury selection proceedings. In its order dismissing the petition, the circuit court found as follows:

> "In support of this allegation, Duncan merely refers to the 'pervasive and sensational media coverage' the case received, and then to several veniremembers who indicated that they had heard of the crime. Duncan simply concludes that counsel's questioning of these jurors was 'minimal and inconsistent,' and that counsel had 'no substantive follow-up.' ...

> "... Again, Duncan has failed to support his allegation with any facts. Instead, he makes a bare assertion followed by a bold conclusion that his constitutional rights have been violated. Duncan fails to identify a single juror ... that was biased or unfair based on their pretrial knowledge of the case. The mere fact that some of the jurors that sat for Duncan's trial had pretrial knowledge of his case is not enough to establish they were biased against him. *See Ex parte Davis*, 718 So. 2d 1166, 1171 (Ala. 1998). Certainly, he has not shown what 'follow-up' questions should have been posed to the jurors he lists as being exposed to pretrial publicity, nor has he shown what their answers would have revealed had they been asked certain questions.

-22-

Although Duncan contends that trial counsel should have retained an expert to help him conduct voir dire, he has not identified who that expert is, much less what they would have done to change the outcome of his case. It is hard to imagine any jurors, when faced with the overwhelming evidence of Duncan's guilt, who would have reached a different verdict.

"... Further, of the veniremembers listed by Duncan in the petition whom he claims were biased, potential juror Barker clearly said that he had not formed an opinion as to the guilt or innocence of the defendant, and that he could base his verdict solely on the evidence presented at trial. (R. 139) Potential Juror Sherrod indicated during questioning by the Court that the case was vaguely familiar to her, but that she did not remember any details and that she had no opinion based on what she had seen or heard. (R. 122-23) Potential Juror Davis stated that she had not read or seen television accounts of the murder, but had 'heard talk about it.' (R. 161) She said she knew nothing in particular, had no opinion about the case, and could be fair and impartial, rendering a verdict based solely on the evidence presented at trial. (R. 161-62) Potential Juror Ezelle said that she had heard about the case when it initially happened, and recently heard that the trial was starting, but that she had not formed any opinion based on what she had heard or read, and that she could be a fair and impartial juror. (R. 175-76)

"... Potential Juror Frye said that she had read about the case when it first happened, but that she had not followed it since then. (R. 178) She said she had formed no opinion about the case, and could be a fair and impartial juror. (R. 178) Likewise, Potential Juror Hester said she had heard about the case when it first happened, and recently that the trial was starting, but that she had formed no opinions about it, and could decide the case solely on the evidence presented at trial. (R. 182-83) Potential Juror Muir also stated that he had only read about the case when it happened, and that he had not formed any opinions about the case. He indicated he would be a fair and impartial juror. (R. 216-17) Potential Juror Noto stated the same — that he had formed no opinion and that he could be fair and impartial, deciding the case solely on the evidence presented at trial. (R. 218-19) Potential Juror O'Neal stated that she had heard someone talking about the case at work, but she had not formed any opinions based on what she heard. She said that she could base her verdict solely on the evidence presented at trial. (R. 223) Potential Juror

Myrick also stated that she only vaguely remembered one of the
defendants being from [Fultondale], but that she had formed no
opinion about the case. (R. 224) She, too, said she could render a
fair and impartial verdict based solely on the evidence presented at
trial. (R. 225) Neither the prosecution nor trial counsel asked any
questions of these jurors when given an opportunity by the Court to
do so, with the exception of Ms. O'Neal, whom the prosecutor asked
only if she had been a witness in an unrelated case. (R. 222-23)

"... The Court also notes that of the other jurors individually
questioned by the parties on exposure to pretrial publicity, trial
counsel did question them further. When it was necessary, counsel
further questioned certain jurors on pretrial publicity. *See, e.g.*, Jurors
Calamusa (R. 140-44); Coleman (R. 145-50); Copus (R. 151-55);
Dillard (R. 169-75); Hayes (R. 181); Huggins (R. 188-91); Hood (R.
185-86); James (R. 193-95); Lewis (R. 198-200; 202-04); McConico
(R. 206-09); and Vail (R. 232).

"... The Court finds that these allegations fail to meet the specificity
and full factual pleading requirements of Rule 32.6(b); therefore, they
are summarily dismissed."

(C.R. 27-30.) The record from the appellant's direct appeal indicates that the trial
court and the attorneys conducted individual voir dire examination of the
veniremembers who had been exposed to pretrial publicity and thoroughly questioned
them regarding the extent of their exposure and their ability to be fair and impartial.
With regard to many of the veniremembers, after specific and extensive questioning
by the trial court and the prosecutor, there simply was not anything further the
appellant's counsel could have asked. Therefore, the record supports the circuit
court's findings, and we adopt them as part of this opinion. Accordingly, summary
dismissal was proper as to this claim.

6.

Sixth, the appellant asserts that counsel rendered ineffective assistance by not
objecting to the court's promise to a juror that the trial would be over by the end of
the week. In relation to this claim, his entire argument in his petition consisted of the
following:

"When one of the jurors expressed concerns over her ability to serve
as a juror for more than one week, the judge reassured her twice,

> saying, 'We're not going to go into next week,' and 'We'll be through this week.' (R. 214, 215)  These remarks were improper, since the length of the trial and deliberations was unpredictable.  The juror could draw inferences from such remarks about the judge's assessment of the strength of the State's evidence, the guilt or innocence of Mr. Duncan, and the level of certainty as to a proper penalty.  Because trial counsel did not object to such a prejudicial comment, this was ineffective assistance of counsel.  Trial counsel's failure to object was prejudicial to Mr. Duncan, since it denied him the right to a fair and impartial jury."

(C.R. 225.)

In its order dismissing the petition, the circuit court found as follows:

> "This allegation is pure speculation, with no supporting facts that the juror was influenced by the Court informing her that the trial would not continue into the following week.  In fact, it did not.  The trial began on October 30 with jury selection, and ended on November 3 with the jury's sentencing recommendation.  Having presided over numerous capital murder trials, the Court would have some idea how long a particular case will last, based on many factors, including conversations with the attorneys and the number of witnesses who will testify.  Duncan seems to be reaching to conclude, based on the Court's comment that the trial would not go beyond the week, that the comment, in any conceivable way, [implied] anything about the Court's opinions on the case, the defendant, or the punishment.  This conclusory allegation clearly fails to meet the full factual pleading requirements of Rule 32.6(b). Therefore, this allegation is summarily dismissed by the Court."

(C.R. 30-31.) The record supports the circuit court's findings, and we adopt them as part of this opinion.  We further note that the trial court also explained to the veniremember that "[t]here is always a possibility we might go into Saturday on some occasions." (A.R. 215.)  Accordingly, summary dismissal was proper as to this claim.

Duncan v. State, 925 So. 2d at 263-69.

The Alabama appellate court determined that most the claims[3] that might be construed as contained within Claim 3(a), alleging ineffective assistance of counsel with respect to assuring a fair and impartial jury, were procedurally barred from review in the appellate court because they were not pled with sufficient specificity under Rule 32.6(b). The Alabama Court of Criminal Appeals clearly and expressly noted that the petitioner procedurally defaulted these claims by failing to plead sufficient facts to show that he is entitled to relief. It is, thus, clear from the record that the last state court to review the claims set forth herein as Claim 3(a) "clearly and expressly" stated that its judgment rested on a procedural bar, which was independent and adequate under state law. See Whiddon v. Dugger, 894 F.2d 1266 (11th Cir. 1990). As such, those claims determined by the state courts to be insufficiently pleaded are procedurally defaulted from consideration in *habeas*, unless petitioner can establish either "cause and prejudice" to avoid the default or that failure to consider the claim will result in a fundamental miscarriage of justice.

A petitioner can overcome the bar of a procedural default only by *either* (1) showing both "cause" for the procedural default and "actual prejudice" as a result of the alleged violation of federal law, *or* (2) by demonstrating that the failure of a federal court to review the procedurally defaulted claims will result in a fundamental miscarriage of justice, in the sense of affirming the conviction of someone who probably is actually innocent. See, e.g., Coleman v. Thompson, 501 U.S. at 749-50 (holding that a state procedural default "will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of

---

[3]        As indicated by the quotation, the state courts denied some of these claims on the merits after analyzing the evidence relating to them. These "merits" claims will be discussed below.

justice'") (citations and internal quotation marks omitted); see also, e.g., Murray v. Carrier, 477 U.S.

478, 496 (1986) ("[W]here a constitutional violation has probably resulted in the conviction of one

who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing

of cause for the procedural default."); Smith v. Murray, 477 U.S. 527, 537 (1986) (same).

The "cause and prejudice" standard is framed in the conjunctive and, therefore, a petitioner

must prove both parts.  The United States Supreme Court summarized the "cause" prong of this

standard in Amadeo v. Zant, 486 U.S. 214 (1988), saying:

> In Wainwright v. Sykes, 433 U.S. 72 (1977), this Court adopted the "cause
> and prejudice" requirement of Francis v. Henderson, [425 U.S. 536 (1976)], for all
> petitioners seeking federal habeas relief on constitutional claims defaulted in state
> court.  The Sykes Court did not elaborate upon this requirement, but rather left open
> "for resolution in future decisions the precise definition of the 'cause'-and-
> 'prejudice' standard." 433 U.S. at 87, 53 L. Ed. 2d 594, 97 S. Ct. 2497.  Although
> more recent decisions likewise have not attempted to establish conclusively the
> contours of the standard, they offer some helpful guidance on the question of cause.
> In Reed v. Ross, 468 U.S. 1, 82 L. Ed. 2d 1, 104 S. Ct. 2901 (1984), the Court
> explained that although a "tactical" or "intentional" decision to forgo a procedural
> opportunity normally cannot constitute cause, id., at 13-14, 82 L. Ed. 2d 1, 104 S. Ct.
> 2901, "the failure of counsel to raise a constitutional issue reasonably unknown to
> him is one situation in which the [cause] requirement is met."  Id., at 14, 82 L. Ed.
> 2d 1, 104 S. Ct. 2901.  The Court later elaborated upon Ross and stated that "the
> existence of cause for a procedural default must ordinarily turn on whether the
> prisoner can show that *some objective factor external to the defense impeded
> counsel's efforts to comply with the State's procedural rule*."  Murray v. Carrier, 477
> U.S. 478, 488 (1986).  We explained that "a showing that the factual or legal basis
> for a claim was not reasonably available to counsel, . . . would constitute cause under
> this standard."  Ibid.

Amadeo v. Zant, 486 U.S. at 221-22 (emphasis supplied).  The Court explained the emphasized

phrase in McCleskey v. Zant, 499 U.S. 467 (1991), saying:

> In procedural default cases, the cause standard requires the petitioner to show
> that "some objective factor external to the defense impeded counsel's efforts" to raise
> the claim in state court.  Murray v. Carrier, 477 U.S., at 488, 106 S.Ct., at 2645.

Objective factors that constitute cause include "'interference by officials'" that makes compliance with the State's procedural rule impracticable, and "a showing that the factual or legal basis for a claim was not reasonably available to counsel." Ibid. In addition, constitutionally "[i]neffective assistance of counsel . . . is cause." Ibid. Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default. Id., at 486-488, 106 S. Ct., at 2644-45. Once the petitioner has established cause, he must show "'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 168, 102 S. Ct. 1584, 1594, 71 L. Ed. 2d 816 (1982).

McCleskey, 499 U.S. at 493-94.

A petitioner also must demonstrate that he actually was prejudiced; he must show "not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis in original).

In addition to the "cause and prejudice" exception to procedural default, *habeas* review can occur if failure to review a claim will result in a "fundamental miscarriage of justice." In a "rare," "extraordinary,"[4] and "narrow class of cases,"[5] a federal *habeas* court may consider a procedurally defaulted claim, in the absence of a showing of "cause" for the procedural default, if (1) a "fundamental miscarriage of justice" has "probably resulted in the conviction of one who is actually innocent." Smith v. Murray, 477 U.S. 527, 537-38 (1986) (quoting, respectively, Engle v. Isaac, 456 U.S. 107, 135 (1982), and Murray v. Carrier, 477 U.S. at 496)( "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a

---

[4]    Schlup v. Delo, 513 U.S. 298, 321 (1995).

[5]    McClesky v. Zant, 499 U.S. 467, 494 (1991).

federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.").[6]

In this case, petitioner has not attempted to establish either cause and prejudice or a fundamental miscarriage of justice to excuse his default of those claims found by the state courts to be insufficiently pleaded for purposes of Rule 32 review.  Plainly, the evidence cited above more than adequately shows that he is unable to show "factual innocence" under  the fundamental miscarriage standard.  Likewise, he has offered no explanation for why his Rule 32 petition was so insufficiently pleaded.  Absent a showing of cause for the insufficiency — a cause external to the defense itself — he is not able to avoid the procedural default of these claims.  Accordingly, those claims reiterated in Claim 3(a) of the *habeas* petition, previously found by the Alabama Court of Criminal Appeals to be subject to summary dismissal, are due to be dismissed as procedurally defaulted.

Some of the claims states in Claim 3(a), relating to the alleged ineffective assistance of counsel in assuring a fair and impartial jury, were denied on the merits by the state courts during Rule 32 review.  Because such claims were considered on the merits, they are not now procedurally defaulted for *habeas* purposes.  Nonetheless, the resolution of these claims by the state courts are entitled to strong deference under 28 U.S.C. § 2254(d).  Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the petitioner can obtain relief on these claims only if he

---

[6]     Procedural default can be avoided in capital-punishment cases if the petitioner shows "by clear and convincing evidence that[,] but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty."  Schlup v. Delo, 513 U.S. 298, 323-27 & n.44 (1995) (quoting Sawyer v. Whitley, 505 U.S. 333, 336 (1992)); see also, e.g., Smith v. Murray, 477 U.S. at 537-38.  As this petitioner is no longer subject to the death penalty, this particular exception to the doctrine of procedural default does not apply.

shows that the Alabama Court of Criminal Appeals' adjudication of the claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2).  See Williams v. Taylor, 529 U.S. 362, 404, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000); Brown v. Payton, ___ U.S. ___, 125 S. Ct. 1432, 161 L. Ed. 2d 334 (2005); Miller-El v. Dretke, ___ U.S. ___, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (2005); Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "[A] state court's factual determinations are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1)."  McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005).  This standard of review is strict, and federal courts are required to give "greater deference to the determinations made by state courts than they were required to under the previous law." Verser v. Nelson, 980 F. Supp. 280, 284 (N.D. Ill. 1997)(quoting Spreitzer v. Peters, 114 F.3d 1435, 1441 (7th Cir. 1997)).

The state-court determination of an issue will be sustained under § 2254(d)(1) unless it is "contrary" to clearly established, controlling Supreme Court law or is an "unreasonable application" of that law.  These are two different inquiries, not to be confused.  The Supreme Court has explained:

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* ... clearly established Federal law, as determined by the Supreme Court of the United States."  (Emphases added.)

Williams v. Taylor,  529 U.S. 362, 404, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  The statute limits the source from which "clearly established Federal law" can be drawn to "holdings, as opposed to the dicta, of the [Supreme] Court's decisions as of the time of the relevant state-court decision."  Williams v. Taylor, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000); see Jones v. Jamrog, 414 F.3d 585 (6th Cir. 2005);  Sevencan v. Herbert, 342 F.3d 69 (2nd Cir. 2003); Warren v. Kyler, 422 F.3d 132, 138 (3rd Cir. 2005) ("[W]e do not consider those holdings as they exist today, but rather as they existed 'as of the time of the relevant state-court decision.'").

A state-court determination is "contrary" to clearly established law in either of two ways:

> First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.

Williams v. Taylor, 529 U.S. 362, 405, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  Likewise, a state-court determination can be an "unreasonable application" of clearly established law in two ways:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Id. at 407; see Putman v. Head, 268 F.3d 1223 (11th Cir. 2001).  Whether the application is "reasonable" turns not on subjective factors, but on whether it was "objectively unreasonable."  The

question is not whether the state court "correctly" decided the issue, but whether its determination was "reasonable," even if incorrect.  See Bell v Cone, 535 U.S. 685, 694, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002).

Petitioner has not shown by clear and convincing evidence that the state courts' determination of his claims of ineffective assistance was "contrary to or an unreasonable application of " established Supreme Court precedent.  Examining the evidence relating to the jury voir dire and seating, the Alabama state courts concluded, under Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), that counsel's conduct was neither professionally unreasonable nor prejudicial to the defense.  This conclusion is not "objectively unreasonable," and, therefore, is entitled to deference under § 2254(d).  Thus, to the extent that the Alabama state courts examined on the merits certain of petitioner's claims of ineffective assistance relating to assuring a fair and impartial jury, petitioner is entitled to no *habeas* relief with respect to them.

### 2.  Prosecutorial Misconduct

Similarly, petitioner's claim relating to an alleged failure of counsel to object to prosecutorial misconduct (Claim 3(b)) also was raised in the Rule 32 petition.[7]  The Alabama Court of Criminal Appeals affirmed the trial court's denial of this claim, noting:

> Ninth, the appellant asserts that counsel rendered ineffective assistance by not objecting to prosecutorial misconduct.

> In its order dismissing the petition, the circuit court found as follows:

---

[7]     Again, this claim is inadequately pled in this court and is therefore due to be denied on that ground alone.

"Duncan makes several allegations that trial counsel were ineffective for failing to object to alleged instances of prosecutorial misconduct. In his first allegation, ... Duncan contends that trial counsel failed to object to the prosecution's alleged misstatement of the law on accomplice liability made during voir dire. Duncan's only attempt at showing prejudice is to conclude that, because there were four co-defendants and the degree of his participation was contested, he was prejudiced by the prosecutor's alleged misstatement.

"... The prosecution's example on accomplice liability occurred during voir dire, and was prefaced with the prosecutor stating that the Court would instruct them on the law of accomplice liability. Further, the Alabama Court of Criminal Appeals addressed Duncan's argument that there was no particularized intent on his part to participate in the murder. The Criminal Court [of] Appeals rejected Duncan's argument, holding that the Court 'clearly instructed the jury that to be convicted of capital murder as an accomplice, the appellant had to possess a particularized intent to kill. Further, the Court correctly instructed the jury with regard to accomplice liability.' *Duncan v. State*, 827 So. 2d at 846-49. 'Because the State presented sufficient evidence connecting the appellant with the commission of the offense and because the trial court properly charged the jury as to [the] necessary intent, the appellant's argument is without merit.' *Id.* at 849. Further, the jury was instructed that the comments of the attorneys are not evidence in the case, and that the Court was the source of the law. (R. 776) The court instructed the jury that what the lawyers may say, may not be an accurate description of the law, 'but I will give you those principles of law which you have to follow in this case at the conclusion of their summations.' (R. 776-77). Jurors are presumed to follow the trial court's instructions. *Wilson v. State*, 777 So. 2d at 893.

"... The Court finds that Duncan has failed [to] plead any facts ... that, if true, would establish trial counsel's performance was deficient or caused him to be prejudiced as required by *Strickland*; therefore, this allegation is hereby summarily dismissed. Rules 32.3 and 32.6(b), Ala. R. Crim. P.

"... Duncan contends that trial counsel were ineffective for failing to object to testimony from the victim's mother, which, according to Duncan, was improper victim-impact evidence. Duncan has failed to

show deficient performance and prejudice.  He has not even attempted to show how the absence of the few details provided by the victim's mother, who served primarily as a time-line witness for the murder, would have changed the outcome of his trial.  The Court finds that this allegation fails to meet the specificity and full factual pleading requirements of Rule 32.6(b); therefore, it is hereby summarily dismissed.

"... Duncan makes two allegations — that counsel was ineffective for failing to object to the prosecutor repeating a question to a witness and for failing to adequately object to an alleged comment by the prosecutor on Duncan's right to remain silent.  Both of the underlying substantive issues were addressed and rejected by the Alabama Court of Criminal Appeals on direct appeal.  Duncan v. State, 827 So. 2d at 857-60.  Duncan cannot relitigate these allegations under the guise of ineffective assistance of counsel.  See Williams v. State, 783 So. 2d at 133.  The Court finds that the allegations ... fail to state a claim or establish that a material issue of fact or law exists as required by Rule 32.7(d); therefore, they are hereby denied."

(C.R. 38-41.) The record supports the circuit court's findings, and we adopt them as part of this opinion. Therefore, summary dismissal was proper as to this claim.


Duncan v. State, 925 So. 2d 273-74.

The last state court to examine the claim that trial counsel was ineffective for failing to object to alleged instances of prosecutorial misconduct found that the claim was not properly before the court both because he failed to properly plead the claim and because some of the issues had already been raised and addressed as substantive claims on direct appeal.  Again, petitioner has failed to show cause and prejudice excusing the default, and he cannot establish factual innocence for application of the fundamental miscarriage of justice exception.  Furthermore, to the extent that the Alabama courts resolved these claims on the merits, petitioner has failed to show that the resolution of the claims was "contrary to or an unreasonable application of" Supreme Court precedent.

-34-

Accordingly, Claim 3(b) also is due to be dismissed because it was specifically found to be procedurally barred by the last state court to review it.

### 3.  Expert Witnesses

Petitioner makes the bare allegation that his counsel was ineffective because he failed to secure "necessary experts," although he does not allege who those experts should have been or what expertise they would have brought to the defense.[8] He raised particular claims relating to the failure to use experts in his Rule 32 petition, and those claims were rejected by the Alabama Court of Criminal Appeals, which determined:

> Third, the appellant asserts that counsel did not "procure the necessary expert assistance to effectively challenge the State's case." (C.R. 215.)
>
> a.
>
> The appellant alleges that his counsel rendered ineffective assistance by not procuring a DNA expert.  In relation to this claim, his entire argument in his petition consisted of the following:
>
>> "Trial counsel was ineffective for not procuring a DNA expert to challenge the State's expert who testified about the blood found on items admitted into evidence.  It is well-established that DNA evidence has an awesome persuasive and prejudicial effect at a criminal trial, and for this reason, the standard for admission of DNA evidence must be strictly followed.  *Ex parte Hutcherson*, 677 So. 2d 1205, 1209 (Ala. 1996)(holding that the erroneous admission of DNA evidence is never harmless).

---

[8]      Again, petitioner's pleading of this claim is so insufficient that that alone would be an appropriate basis for denying *habeas* relief.

"... For this reason, DNA evidence can only be admitted after meeting a rigorous set of standards guiding admission. The trial court must first find that: (1) the theory and technique (i.e., the principle and methodology) upon which the proffered DNA forensic evidence is based is 'reliable'; and (2) the theory and technique upon which the proffered DNA forensic evidence is based is deemed 'relevant' to understanding the evidence or to determining a fact in issue. *See Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993); *Turner v. State*, 746 So. 2d 355, 361 (Ala. 1998).

"... Compliance with the *Daubert* requirements can only be established after a full hearing outside the presence of the jury. *Turner*, 746 So. 2d at 361. Though defense counsel made a pre-trial motion to exclude DNA evidence in Mr. Duncan's case, the trial court never held a hearing on this motion. (R. 101) If Mr. Duncan had been represented by effective counsel, he would have secured a hearing on the admissibility of the DNA evidence and a DNA expert, who would have assisted in challenging the admissibility and the reliability of the State's evidence."

(C.R. 215-16.)

In its order dismissing the petition, the circuit court found as follows:

"[The appellant] contends that trial counsel was ineffective for failing to retain a DNA expert to challenge the prosecution's expert who testified about 'blood found on items admitted into evidence.' ... Duncan offers no further support for this allegation. He does not identify a particular expert, much less what that expert would testify to, nor does he state how such an expert would have countered the State's evidence. This allegation fails to meet the specificity and full factual pleading requirements of Rule 32.6(b); therefore, it is summarily dismissed."

(C.R. 16.) The record supports the circuit court's findings, and we adopt them as part of this opinion. Also, the record from the appellant's direct appeal shows that counsel thoroughly questioned the State's expert about the method of testing he used and questioned why he did not use a newer, more precise method of DNA testing. Therefore, summary dismissal was proper as to this claim.

-36-

b.

The appellant also alleges that his counsel rendered ineffective assistance by not procuring an investigator or social worker.  In relation to this claim, his entire argument in his petition consisted of the following:

> "Trial counsel failed to obtain the assistance of an investigator or social worker to uncover exculpatory evidence, examine the State's evidence, interview the State's witnesses and potential defense witnesses, and otherwise assist in the development of a viable defense.  As a result, trial counsel lacked the necessary information to make important decisions about the defense strategy. *See Wiggins [v. Smith]*, 123 S. Ct. [2527] at 2536 [(2003)].  This lack of investigation was unreasonable and prejudiced Mr. Duncan."

(C.R. 216-17.)

In its order dismissing the petition, the circuit court found as follows:

> "Duncan has provided the Court with absolutely no facts in support of his allegation.  Duncan fails to identify ... any exculpatory evidence that could have been uncovered or what the examination of the State's evidence or interviews with State witnesses would have revealed.  Further, Duncan fails to identify what 'viable defense' would have been developed with assistance.  The Court finds that [this allegation] fails to meet the specificity and full factual pleading requirements of Rule 32.6(b); therefore, this allegation is summarily dismissed."

(C.R. 16-17.) The record supports the circuit court's findings, and we adopt them as part of this opinion.  Also, in support of a post-trial motion for permission for a third person to interview the appellant, counsel asserted:

> "I am requesting permission for Dr. Marjie Britz to interview Trace R. Duncan in my presence at Holman Prison on Friday, July 21, 1996....
>
> "Dr. Marjie Britz worked on this case for over a year. She directly assisted on a full time paid basis during the trial on the Motion to

Transfer Trace R. Duncan for trial in the Circuit Court, where he was
later convicted.

"... She was instrumental in forming the trial strategy that was used
at the Motion to Transfer trial, and which was planned, but not used,
at the Circuit Court level."

(A.C.R. 178.)  Based on this affidavit, it appears that counsel did have some expert
assistance in preparing for the trial.  For these reasons, summary dismissal was
proper as to this claim.

c.

The appellant further alleges that his counsel rendered ineffective assistance by not
procuring a mental health expert.  In relation to this claim, his entire argument in his
petition consisted of the following:

"Trial counsel was ineffective for not obtaining a mental health
evaluation of Mr. Duncan.  Mr. Duncan's long history of academic,
behavioral, and emotional problems — combined with serious
substance abuse — were more than adequate to serve notice to any
reasonably competent counsel that mental health defects likely played
a role in the offense.  Counsel's failure to request such an evaluation
was clearly ineffective and prejudiced Mr. Duncan."

(C.R. 217.)

In its order dismissing the petition, the circuit court found as follows:

"Duncan does not identify in his petition any particular 'mental
health' expert, [or] proffer what that expert would have testified about
at trial.  This is a bare assertion with absolutely no factual basis,
followed by a bold conclusion that counsel was ineffective.  The
Court finds that [this allegation] fails to meet the specificity and full
factual pleading requirements of Rule 32.6(b); therefore, this
allegation is summarily dismissed."

(C.R. 17.) The record supports the circuit court's findings, and we adopt them as part
of this opinion. Therefore, summary dismissal was proper as to this claim.

d.

The appellant finally alleges that his counsel rendered ineffective assistance by not procuring an expert on the effects of drug and alcohol use. In relation to this claim, his entire argument in his petition consisted of the following:

> "Defense counsel was ineffective for failing to procure an expert on the effects of drug and alcohol use to present evidence in support of the charge of manslaughter over capital murder. While evidence had been presented that Mr. Duncan was drinking on the night of the crime (R. 768), there was no evidence as to what effect this drinking would have on his actions. If defense counsel would have called an expert in this area, the jury would have been informed of the potentially serious effects of drugs and alcohol on Mr. Duncan's perceptions. This evidence would have supported a finding of manslaughter, making its absence prejudicial to Mr. Duncan."

(C.R. 217-18.)

In its order dismissing the petition, the circuit court found as follows:

> "Duncan has failed to identify ... any expert in any particular field by name or proffer to the Court what such an expert would have testified about at trial. There was ample testimony that Duncan had been drinking and smoking marijuana on the night of the murder. Because there was evidence of intoxication, the Court instructed the jury on [the] issue of intoxication and the lesser-included offense of manslaughter. (R. 875-878) Certainly 12 citizens, utilizing their common sense, could have determined that drinking alcohol and smoking marijuana could cause an individual to become intoxicated. Duncan has failed to plead any facts ... that, if true, would establish an expert on the effects of alcohol and drug would have benefited [sic] his defense. The Court finds that Duncan has failed to plead any facts establishing that counsel's performance was deficient or that he was prejudiced as required by *Strickland*. Rule 32.6(b), Ala. R. Crim. P. Therefore, the allegation ... is hereby summarily dismissed."

(C.R. 18-19.) The record supports the circuit court's findings, and we adopt them as part of this opinion. Therefore, summary dismissal was proper as to this claim.

<u>Duncan v. State</u>, 925 So. 2d at 260-63.

The claims relating to experts, even if adequately pled here, still are due to be dismissed because they were rejected by the Alabama Court of Criminal Appeals on grounds that the allegations failed to meet the pleading requirements of Rule 32.6(b).  Because these are procedurally defaulted, petitioner is required to show "cause and prejudice" or a fundamental miscarriage of justice to obtain *habeas* review of them.  He has not done so.  Additionally, insofar as some of the state court rulings might be read as adjudication on the merits, the resolution reached by the state courts is entitled to deference under § 2254(d).  Petitioner has not shown that the resolution reached by the state courts is "contrary to or an unreasonable application of" well-established Supreme Court precedent.  Accordingly, Claim 3(c) also is due to be dismissed because it was specifically found to be procedurally barred by the last state court to review it.

### 4.  Opening Statement and Closing Argument

Petitioner makes the bare assertion that his counsel rendered ineffective assistance in that he "provided an ineffective opening and closing argument."  As discussed *supra*, this claim is not sufficiently pled to warrant relief.  Even if the claim were adequately pled, however, it still would be due to be dismissed.  Petitioner raised the same claim in his Rule 32 petition, which was denied, and the Alabama Court of Criminal Appeals examined the claims on appeal, stating:

> Seventh, the appellant asserts that counsel rendered ineffective assistance during his opening statement.  In its order dismissing the petition, the circuit court found as follows:

"Duncan makes two allegations.  Duncan first contends that counsel was ineffective during the opening state[ments] because he 'summarized' the prosecution's evidence.   He contends this 'rehashing' of the prosecution's case was prejudicial, because 'the jury heard the evidence from Mr. Duncan's only voice in the courtroom — his attorney.'  ... Duncan has failed to show that counsel's summary of what he expected the evidence to show, which was not the same as the prosecution's expectation of the evidence, was deficient, much less how the outcome of his trial would have been different.  He has not offered any examples of what counsel should have said in opening statements, which, in fact, is the proper place to tell the jury what the defense expects the evidence to show.  It is not a place for argument.

"... Trial counsel was faced with overwhelming evidence of his client's guilt, and a review of the opening statement shows he did with it what he could.  Duncan has failed to meet his burden of pleading specific facts that would establish deficient performance or prejudice as required by *Strickland*; therefore, this allegation is summarily dismissed by the Court.  Rule 32.6(b), Ala. R. Crim. P.

"... Duncan also contends ... that trial counsel was ineffective for telling the jury that Duncan would take the stand to testify. Duncan fails, however, to include in his petition the fact that counsel immediately said he is not required to and may choose not to.  (R. 268)  Although Duncan did not testify at the guilt phase, he did, in fact, testify at the penalty phase before the jury.  (R. 939-1108) During opening statements, counsel did not say he would testify at the guilt phase, just that he might tell his version of events — which he did.  Further, the Court properly instructed the jury that Duncan was not required to take the stand at the guilt phase in his own defense. (R. 889-990)  The jury was instructed to draw no inferences as to his guilt or innocence if he did not take the stand.  (R. 890)  Jurors are presumed to follow the trial court's instructions. *See Wilson v. State*, 777 So. 2d 856, 893 (Ala. Crim. App. 1999).

"... The court finds that this allegation ... fails to meet the specificity and full factual pleading requirements of Rule 32.6(b); therefore, it is hereby summarily [dismissed]."

(C.R. 31-32.) The record supports the circuit court's findings, and we adopt them as part of this opinion. Therefore, summary dismissal was proper as to this claim.

* * *

Eleventh, the appellant asserts that counsel rendered ineffective assistance by presenting a prejudicial closing argument. In its order dismissing the petition, the circuit court found as follows:

> "Duncan contends that trial counsel presented a prejudicial closing argument, because counsel spent some portion of his argument focusing 'on the fact that the victim had not died from strangulation — the original investigation theory — but from head wounds.' ... Duncan concludes that this argument was prejudicial, because he had admitted to kicking the victim in the head. A review of that portion of counsel's argument — which the jury was instructed was not evidence (R. 776) — was counsel's attempt to explain the second portion of Duncan's statement to police, which, unlike the first portion of his statement, was not handwritten by Duncan. Counsel was reasoning that the second, more incriminating part of the statement was coerced by police in an attempt to get Duncan's version of events to coincide with the coroner's initial cause of death — strangulation. Duncan initially said that he heard two loud smacks (supposedly the beer bottles thrown at the victim by the codefendants), saw the victim running, and then went to sleep in the car, frightened for his life. This version of events was the same version he testified to at the penalty phase. Although he admitted to kicking the victim — most probably out of necessity, considering the victim's blood was found on the tip of his boots — he said she was unconscious when he did so. Counsel was attempting to explain the contradiction in his statement, which counsel argued was the result of police making Duncan conform his story to match the suspected cause of death of the victim.

> "... Duncan's only attempt at demonstrating prejudice is to argue that 'because of the important role of closing argument in persuading the jury,' the argument was highly prejudicial.... Clearly, Duncan has failed to plead any facts establishing deficient performance or that the outcome of his trial would have been different but for the comments made by counsel during closing arguments. The Court finds that the allegation ... fails to meet the specificity and full factual pleading requirements of Rule 32.6(b); therefore, it is hereby summarily dismissed."

(C.R. 42-44.) The record supports the circuit court's findings, and we adopt them as part of this opinion. We further note that the record from the appellant's direct appeal establishes that, during his closing argument, counsel also argued that the evidence was not sufficient to support a conviction because the appellant did not kidnap, rob, or aid the codefendants in committing the murder; that the appellant was too drunk to know what was happening; and that the codefendants could have committed the murder as a Satanic ritual. He also challenged the State's evidence by questioning whether the officers coerced the appellant to change his statement and by questioning why newer, more precise DNA testing had not been used. Finally, he portrayed the appellant as someone who was drunk and who could have been manipulated by the codefendants and their alleged connections to the occult. Based on our review of the record and the circuit court's findings, we conclude that the appellant has not satisfied his burden of pleading as to this claim. Therefore, summary dismissal was proper as to this claim.

Duncan v. State, 925 So. 2d at 269-70, 275-76.

Again, petitioner's claim, even if adequately pled, would be due to be denied because the Alabama Court of Criminal Appeals clearly determined that the claim was procedurally barred. He has not shown "cause and prejudice" or a fundamental miscarriage of justice to excuse the default. Additionally, insofar as some of the state court rulings might be read as adjudication on the merits, the resolution reached by the state courts is entitled to deference under § 2254(d). Petitioner has not shown that the resolution reached by the state courts is "contrary to or an unreasonable application of" well-established Supreme Court precedent. Accordingly, Claim 3(d) also is due to be denied.

### 5. Reasonable Theory of Defense

Petitioner argues simply that his counsel failed to "formulate and argue any reasonable theory of defense." As pled, the claim is clearly inadequate to form the basis for *habeas* relief, and can be denied on that basis alone. Even if the claim were adequately pled, however, and were viewed as

including the allegations made in the Rule 32 proceedings, it still would be due to be dismissed as

procedurally defaulted.  The Alabama Court of Criminal Appeals examined the claim on appeal and

found that it was procedurally barred, stating:

> Tenth, the appellant asserts that counsel rendered ineffective assistance by not formulating and arguing any reasonable theory of defense.  In its order dismissing the petition, the circuit court found as follows:

>> "Duncan alleges that trial counsel failed to 'set forth a viable theory of defense that would have allowed the jury to acquit [him] of capital murder.' ...  Duncan fails, however, to suggest[ ] what 'viable' theory trial counsel should have presented, in light of the overwhelming evidence against him.  He takes issue with trial counsel portraying the co-defendants as Satanists, contending that the portrayal did not provide him a defense....  The Court finds, however, that distancing Duncan from Satanic worship was reasonable.  Duncan had denied any 'major role' in the beating of the victim — he contended he only kicked her a few times in the head — and said he was asleep in the car when two of the codefendants returned to the victim's body to mutilate it, stabbing it over 180 times, removing organs and eating them, and removing fingers to thwart identification and to keep as souvenirs.  Trial counsel attempted to portray codefendant Grayson as the older, instigator and leader, who was a Satanist wanting to sacrifice the victim to Satan.  It would certainly be in Duncan's best interests to distance himself from an interest in the occult and Satanism.

>> "... Again, Duncan has failed to proffer any facts showing prejudice, and has failed to support his contention that there existed a viable defense trial counsel could have presented and what the defense would have been.  As noted above, the jury was instructed that the comments of the attorneys were not evidence.  Trial counsel was presented with overwhelming evidence of guilt against his client, which included Duncan's own incriminating statement.  The Court finds that Duncan has failed to meet his burden of pleading any facts that, if true, would establish counsel's performance was deficient and that he suffered prejudice as required by Strickland.  Therefore, the allegation ... is hereby summarily dismissed. Rules 32.3 and 32.6(b), Ala. R. Crim. P."

(C.R. 41-42.) We further note that the record from the appellant's direct appeal indicates that, against the recommendation of counsel, the appellant chose not to testify during the guilt phase of the trial. Nevertheless, counsel was able to interject his theory that two codefendants were Satanists, instigated the murder, committed most of the acts against the victim, and threatened to kill the appellant if he told what had happened. The record supports the circuit court's findings that counsel's actions were reasonable, and we adopt them as part of this opinion. Therefore, summary dismissal was proper as to this claim.

Duncan v. State, 925 So. 2d at 274-75.

Petitioner's claim, even if adequately pled, is due to be denied because the Alabama Court of Criminal Appeals clearly determined that the claim was procedurally barred. He has not shown either "cause and prejudice" or a fundamental miscarriage of justice excusing the default. Additionally, insofar as some of the state court rulings might be read as an adjudication on the merits, the resolution reached by the state courts is entitled to deference under § 2254(d). Petitioner has not shown that the resolution reached by the state courts is "contrary to or an unreasonable application of" well-established Supreme Court precedent. Accordingly, Claim 3(e) also is due to be denied.

### 6. Disciplinary Actions

Finally, petitioner asserts that his counsel rendered ineffective assistance because he has a "long record of bar disciplinary actions." As pled, the claim is clearly inadequate to form the basis for relief because it fails even to allege that counsel was ineffective with respect to his representation of petitioner. Even if the claim were adequately pled, however, and were viewed as including the

allegations made in the Rule 32 proceedings, it still would be due to be dismissed.  The Alabama

Court of Criminal Appeals addressed this precise issue and stated:

> First, the appellant asserts that his case "is but a single example of [counsel's]
> ineffective and negligent representation of clients, as evidenced by a long record of
> bar disciplinary actions." (C.R. 214.)  In relation to this claim, his entire argument
> in his petition consisted of the following:
>
>> "Between 1994 and 2001, the Alabama Bar Association disciplined
>> [counsel] eighteen times for violating the Rules of Professional
>> Conduct.  These eighteen violations include failing to provide
>> competent representation (Rule 1.1), neglecting legal matters
>> entrusted to him (Rule 1.3), failing to keep clients reasonably
>> informed (Rule 1.4(a)), charging excessive fees (Rule 1.5), failing to
>> refund an advanced payment that was not earned (Rule 1.16(d)), and
>> engaging in conduct that adversely reflected his fitness to practice law
>> (Rule 8.4(g)).  As a consequence of these numerous violations, trial
>> counsel received a private reprimand, public reprimands (both with
>> and without general publication), and various suspensions, ranging in
>> duration from 45 days to, most recently, two years.  This record
>> reflects a pattern of both unethical and ineffective representation.  It
>> was during this period that [counsel] represented Mr. Duncan in his
>> capital trial, sentencing hearing, and direct appeal."

(C.R. 214.)

In its order dismissing the petition, the circuit court found as follows:

>> "In *Adkins v. State*, CR-99-0834, ___ So. 2d ___, ___(Ala. Crim.
>> App. March 26, 2004), the Alabama Court of Criminal Appeals
>> addressed his precise issue and held that '[t]he fact that [trial counsel]
>> have been disciplined by the Alabama State Bar on unrelated matters
>> has no bearing on their performance in Adkins's trial.'  Other than a
>> short recounting of some of the alleged violations and some of the
>> alleged resulting reprimands, Duncan has provided the Court with
>> absolutely no facts to show that, as a result of prior conduct in other
>> unrelated cases, trial counsel was ineffective in his case.  Duncan has
>> provided no facts underlying the alleged violations, and other than a
>> ball-park range of 1994 to 2001, no specific dates when the alleged
>> violations occurred.  Duncan appears to make his case simply by

> saying that if counsel was guilty of part [sic] collateral acts, he is guilty of the alleged present ineffectiveness. This is a principle of law routinely objected to by criminal defendants as being improper — prior bad acts cannot be used to establish the guilt of a defendant in the present case he is being tried for.  This would be like the State attempting to use Duncan's prior bad acts to prove he committed capital murder, which certainly is not permitted.  Duncan has clearly failed to meet the specificity and full factual pleading requirements of Rule 32.6(b), Ala. R. Crim. P. Therefore, this allegation is summarily dismissed."

(C.R. 13-14.) The record supports the circuit court's findings, and we adopt them as part of this opinion. The bare fact that counsel was disciplined in other cases does not establish that counsel rendered ineffective assistance in the appellant's case. The appellant did not satisfy his burden of pleading as to this claim. See Rules 32.3 and 32.6(b), Ala. R.Crim. P. Therefore, summary dismissal was proper as to this claim.

Duncan v. State, 925 So. 2d 245, 258-59.

Once again petitioner has failed to adequately set forth a basis for relief because he has not explained any connection between counsel's disciplinary actions in other cases and the trial about which he now complains.  Even if adequately pled here, however, Claim 3(e) is due to be denied because the Alabama Court of Criminal Appeals clearly determined that the claim was procedurally barred, and petitioner has failed to show "cause and prejudice" or a fundamental miscarriage of justice to excuse the default.  Accordingly, Claims 3(f) is due to be dismissed.

## CONCLUSION

Accordingly, for the reasons stated above, the court finds that the petition for writ of *habeas corpus* under 28 U.S.C. § 2254 is due to be and **DENIED** and **DISMISSED WITH PREJUDICE**. A separate order will be entered herewith.

–47–

The Clerk is **DIRECTED** to mail a copy of this order to the petitioner at his most recent address.

**DONE** this the 27th day of March, 2007.

**VIRGINIA EMERSON HOPKINS**
United States District Judge